IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK08-80876-TLS |
| | ) | |
| ALVO GRAIN AND FEED, INC., | ) | |
| | ) | CH. 11 |
| Debtor. | ) | |

<u>ORDER</u>

      Hearing was held in Omaha, Nebraska, on August 18, 2008, on four Motions to Assume Leases or Executory Contracts filed by Debtor (Fil. #168, #169, #170, and #171), and Objections filed by Bernie Heier, Johnson Bros., Merlin Scholting, and She & I Farms, Inc. (Fil. #181 and #205). Trev Peterson appeared for Debtor; Joseph H. Badami appeared for Bernie Heier, Johnson Bros., Merlin Scholting, and She & I Farms ("Producers"); Richard P. Garden. Jr. appeared for Archer Daniels Midlands Corporation ("ADM"); John Hahn appeared for American Exchange Bank; Rob Shortridge appeared for Jerry Newsham; Frederick Stehlik and David Farrell appeared for Bunge North America; and Jerry Haertel appeared on his own behalf.

      Prior to the commencement of this Chapter 11 proceeding, Debtor had entered into numerous contracts ("Producer Contracts") for the future purchase of corn, soybeans, and/or wheat ("grain") at a specified price from, among others, the Producers. The time for delivery of the grain has not yet occurred. Prior to bankruptcy filing, Debtor also had entered into contracts ("Buyer Contracts") to sell grain to several companies ("Buyers"), including ADM, Cargill, and Bunge.

      Debtor now desires to assume specified Producer Contracts and assign them to the Buyers. Debtor asserts that by doing so, the total claims against the bankruptcy estate will be reduced. Specifically, the price of grain has risen significantly since the Buyer Contracts were executed and the Buyers will have substantial damages due to the high price of replacement grain if Debtor is unable to deliver grain at the lower price in accordance with the Buyer Contracts.

      The Producers assert that Debtor no longer holds a grain dealer's license and that the Producer Contracts became void when Debtor stopped being a licensed grain dealer. Furthermore, some of the contracts call for delivery by the Producers to Debtor's locations, which are no longer operating. Therefore, the assumption and assignment motions alter the delivery location for those contracts, and the Producers assert that is a material change which could cause added costs to the Producers. Accordingly, the Producers assert that the assumption and assignment motions should be denied.

      11 U.S.C. § 365(a) gives Debtor the right to assume or reject executory contracts. Further, pursuant to 11 U.S.C. § 365(f), the trustee may assign an executory contract if the contract is assumed and adequate assurance of future performance by the assignee is provided. Here, the Buyers are large, well-known corporations which are willing to make immediate payment directly to the Producers upon delivery of the grain. The Producers do not appear to dispute the financial stability of the Buyers. Further, Debtor and the Buyers have provided numerous alternative delivery

locations for those contracts calling for delivery at Debtor's facilities. The Producers argue that the alternative delivery locations could cause added costs in connection with delivery. However, no such evidence was presented as to any specific contract or Producer. Accordingly, in light of the undisputed financial strength of the Buyers and the multiple alternative delivery sites that are available, I find that the objection of the Producers based on material modification of the contracts should be overruled.

The primary argument raised by the Producers is that the contracts became void upon surrender of Debtor's grain dealer's license and, therefore, cannot be assumed. The Producers cite to two cases. *In re C&S Grain Co., Inc.*, 47 F.3d 233 (7th Cir. 1995) and *In re Frank Higgason Grain, Inc.*, 1996 WL 33406130 (Bankr. C.D. Ill. 1996). Both cases involved grain dealers wishing to assume and assign contracts for the purchase of grain. In each case, as in the present case, the grain dealer had surrendered or otherwise lost its grain dealer's license prior to bankruptcy filing. In *C&S*, the Seventh Circuit Court of Appeals stated: "[i]n Illinois, once a statute imposes licensure as a precondition for operation and provides a penalty for its violation, a contract for the unlicensed performance of that act is void." 47 F.3d at 237. Therefore, the Seventh Circuit determined that the contracts became void, the producers were relieved of their duties to perform, and the contracts were no longer executory and could not be assumed. *Id.* In the *Frank Higgason Grain* case, the Illinois Bankruptcy Court followed the Seventh Circuit's decision in *C&S Grain* and determined under similar facts that the producer contracts were void and could not be assumed and assigned.

I decline to follow the *C&S Grain* analysis for several reasons. First, the Seventh Circuit relied heavily upon Illinois law as deeming a contract void upon loss of the grain dealer's license. In the case at hand, the parties have not directed the Court's attention to any Nebraska law or bankruptcy law that would cause the Producer Contracts to become void upon surrender of the grain dealer's license. Second, Debtor has produced the affidavit of the Executive Director of the Nebraska Public Service Commission, which is the state agency charged with licensing and regulation of grain dealers in Nebraska. In that affidavit, the director testified that it is acceptable to assign the pre-petition contracts for the purchase of grain in order to satisfy Debtor's pre-petition contracts for the sale of grain. *See* Affidavit of Michael Hybl (Fil. #152). There was apparently no such evidence in the Seventh Circuit case. Of course, this Court understands that the opinion of Mr. Hybl is not equivalent to a formal decision by the Nebraska Public Service Commission, but Mr. Hybl is the executive director of the Commission, and his opinion is certainly instructive. Finally, it is important to recognize that the assumption of the Producer Contracts by Debtor is <u>not</u> for the purpose of performing the contracts without a license. Instead, the assumption is simply to benefit this bankruptcy estate by allowing Debtor to assign the contracts to properly licensed grain dealers who are ready, willing, and able to perform.

The assumption and assignment of the grain purchase contracts will clearly benefit the bankruptcy estate by reducing the damage claims of the grain Buyers. In fact, one such Buyer, ADM, testified that its claim against the bankruptcy estate would be reduced by at least $414,000.00 as a result of the proposed assumption and assignment of contracts. Further, the Producers will not be harmed by the assumption and assignment. In fact, the assumption and assignment simply gives the Producers the benefit of their contractual bargain. The only "harm" is that the Producers will

not be able to use the bankruptcy process to take advantage of the recent increase in the price of grain.

IT IS, THEREFORE, ORDERED that the Motions to Assume Leases or Executory Contracts (Fil. #168, #169, #170, and #171) are granted. Debtor shall submit for Court approval proposed orders authorizing the assumption and assignment and specifically identifying the contracts subject to each motion.

DATED: August 26, 2008.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Trev Peterson
    Joseph H. Badami
    Rob Shortridge
    John Hahn
    Frederick Stehlik
    David Farrell
    Richard P. Garden, Jr.
    Jerry Haertel
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.